UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | | |
|---|---|---|
| HANSEL CARTER and NICHOLAS CARTER | * * * | CIVIL ACTION NO.: |
| vs. | * * | JUDGE: |
| EXPRESS COURIER INTERNATIONAL, INCO., and EMP LSO HOLDING CORPORATION | * * * * | MAGISTRATE: |

## ORIGINAL COMPLAINT

COME NOW Plaintiffs Hansel Carter and Nicholas Carter ("Plaintiffs"), by and through their attorney Philip Bohrer of Bohrer Brady, LLC, and for their Original Complaint ("Complaint") against Defendants Express Courier International, Inc., and EMP LSO Holding Corporation (hereinafter collectively referred to as "Defendant"), and in support thereof does hereby state and allege as follows:

### I. PRELIMINARY STATEMENTS

1. Plaintiffs bring this action under the Fair Labor Standards Act, 29 U.S.C. § 201, *et seq*. ("FLSA"), for declaratory judgment, monetary damages, liquidated damages, prejudgment interest, and a reasonable attorney's fee and costs, as a result of Defendant's failure to pay Plaintiffs minimum and overtime wages as required by law.

### II. JURISDICTION AND VENUE

2. The United States District Court for the Eastern District of Louisiana has subject matter jurisdiction over this suit under the provisions of 28 U.S.C. § 1331 because this suit raises federal questions under the FLSA.

3. Defendant conducts business within the State of Louisiana, and within the Eastern District, providing courier/delivery services within the State of Louisiana.

4. Venue lies properly within this Court under 28 U.S.C. § 1391(b)(1) and (c)(2), because the State of Louisiana has personal jurisdiction over Defendant, and Defendant therefore "resides" in Louisiana.

5. A substantial part of the acts complained of herein were committed and had their principal effect against Plaintiffs within the Eastern District of Louisiana; venue is proper in this Court pursuant to 28 U.S.C. § 1391.

### III.   THE PARTIES

6. Plaintiff Hansel Carter is a major individual, resident of the State of Louisiana, and domiciled in New Orleans.

7. Plaintiff Nicholas Carter is a major individual, resident of the State of Louisiana, and domiciled in New Orleans.

8. At all times relevant to this Complaint, each Plaintiff performed courier services for Defendant within the State of Louisiana.

9. Defendant Express Courier International, Inc. ("Express"), is a foreign, for-profit corporation, registered to conduct business within the State of Louisiana.

10. Express has designated CT Corporation System at 3867 Plaza Tower Drive, Baton Rouge, Louisiana 70816, to accept service on its behalf.

11. Defendant EMP LSO Holding Corporation ("LSO") is a foreign, for-profit corporation, whose principle place of business is 3060 Peachtree Road NW, Suite 360, Atlanta, Georgia 30305.

12. At all relevant times, both Defendants exercised substantial control over the terms and conditions of Plaintiffs' employment and were joint employers under the FLSA.

13. Defendants provide on-demand and scheduled courier services.

14. Defendants' primary business purpose is to provide courier/delivery services, and Defendants engage couriers/drivers to accomplish this goal.

15. Courier/delivery services are at least one integral part of Defendants' business.

16. Defendants' annual gross volume of sales made or business done was not less than $500,000.00 (exclusive of excise taxes at the retail level that are separately stated) during each of the three calendar years preceding the filing of this Complaint.

17. Defendants have at least two employees that handle, sell, or otherwise work on goods or materials that have been moved in or produced for interstate commerce, including, but not limited to, medical supplies and bio-materials, office supplies, auto parts, manufactured goods, or office equipment for the benefit of Defendants.

## IV.     FACTUAL ALLEGATIONS

18. Plaintiffs repeat and re-allege all previous paragraphs of this Complaint as though fully incorporated in this section.

19. To carry out Defendants' courier/delivery services, Defendants contracted with couriers/drivers (referred to herein as "couriers" or "drivers") during the relevant time.

20. Both Plaintiffs performed the basic duties of a courier during the relevant time.

21. The basic duties of a courier include transporting and delivering packages to Defendants' customers.

22. To support its delivery business, Defendants maintained a hierarchy of corporate level employees to oversee numerous field "branches," which were located throughout the southeastern United States and were divided into regions.

23. At the corporate level, Defendants maintained an operations department, a compliance department, an accounting department, a marketing department, an information-technology department, and an insurance department.

24. Defendants' compliance department was responsible for determining what was required to conduct Defendants' courier services in compliance with applicable laws and communicating those requirements to Defendants' branches.

25. The compliance department was in charge of preparation, maintenance and use of Defendants' standard Agreement.

26. Defendants' compliance department was also responsible for processing all applications to become drivers and vetting them for minimum requirements.

27. Defendants' corporate office had a Director of Business Analytics whose job was to help the branch run more efficiently or perform research to improve business operations.

28. Defendants also employed a Director of Operations to support branches and sales by mining data and running reports for the company for maximizing profits.

29. Defendants also maintained a corporate-level dispatch office, with an attachment of "Central Ops Specialists," whose job was to monitor customer requirements and make sure customer expectations were met.

30. Each branch had a senior employee in charge of the branch and drivers.

31. Branch Managers were responsible to ensure that Plaintiffs were operating under applicable company, federal and state rules, regulations and operating procedures.

32. Branch Managers were also responsible to ensure that customers were receiving quality delivery services and that deliveries were made on time.

33. Branch Managers were required to facilitate branch standards reporting to Defendants' corporate office regarding how satisfied customers were with drivers' delivery performance.

34. Defendants required Branch Managers to have management skills that would allow them to ensure that drivers delivered packages on time and that customers were satisfied and to bring in new customers or sell services.

35. Branch Managers or whoever else was in charge of the facility had the authority to terminate Plaintiffs.

36. Branch Managers were also tasked with managing the branch within budgeted guidelines from Defendants' corporate office and the parameters set by the Regional Director.

37. Branch Managers were also responsible for maintaining a positive and safe working environment for individuals working at the branch, which included drivers.

38. Branch Managers were in charge of assigning the routes to drivers.

39. Branch Managers, not drivers, were responsible for setting long and short-term business objectives.

40. Defendants treated each Plaintiff as an "independent contractor" for purposes of the FLSA.

41. Defendants required each and every potential courier to enter into a standard agreement, which Defendants called an "independent contractor agreement" or "owner-operator agreement."

42. Plaintiffs were not involved in drafting the terms of Defendants' standard agreement.

43. Defendants required each driver to satisfy whatever needs and requirements Defendants' customers had.

44. All drivers were hired to work for Defendants for an indefinite period of time.

45. Defendants expected each Plaintiff to wear a photo identification badge.

46. Plaintiffs were expected to follow Defendants' dress code and guidelines.

47. Defendants leased warehouses in which drivers picked-up parcels for delivery.

48. No drivers shared in Defendants' profits.

49. No drivers shared in Defendants' losses.

50. Defendants paid drivers through a combination of piece rates, route rates or delivery rates.

51. Defendants entered into contracts with their customers, and no drivers signed contracts with Defendants' customers.

52. Defendants set prices to its customers for certain types of packages or delivery routes without driver input or negotiation.

53. Defendants determined where to locate Defendants' branches and offices without driver input.

54. Defendants made decisions on advertising Defendants' business without driver input.

55. Plaintiffs did not advertise themselves as independent businesses.

56. Defendants made decisions on what new business to pursue or take without driver input.

57. Drivers did not negotiate contracts or prices with Defendants' customers.

58. Defendant expected drivers to follow Defendant's policies regarding how to track deliveries.

59. Defendants' standard agreement required drivers to obtain and maintain certain types of insurance.

60. Defendants' standard agreement required drivers to use communication equipment that was compatible with Defendants' operating system.

61. Defendants' standard agreement gave Defendants the sole discretion to investigate, adjudicate and charge drivers for delays, shortages, mis-deliveries, and claims related to lost, damaged or contaminated loads.

62. Defendants' standard agreement required drivers to obtain written consent from Defendants before operating their vehicles for another motor carrier.

63. If a customer had a complaint about any driver, the customer was supposed to complain to someone at the branch or to corporate headquarters, not to the driver.

64. Defendants generally did not pay any drivers any overtime premium for hours that they worked over forty hours per week.

65. If any driver worked more than forty hours per week, Defendants' policy was not to pay that driver an overtime premium of one and one half times the driver's regular rate for the hours over forty.

66. Defendants had a general practice keeping no contemporaneous records of time that drivers performed courier/delivery services on Defendants' behalf.

67. After deducting for expenses related to the operation of at least some Plaintiffs' vehicles in the course of performing job duties for Defendants, some Plaintiffs' pay regularly fell below the minimum wages required by the FLSA.

68. Defendants knew or should have known that the job duties of Plaintiffs required Plaintiffs to work hours in excess of forty per week, yet Defendants failed and refused to compensate Plaintiffs for their work as required by the FLSA.

69. At all times relevant hereto, Defendants were aware of the minimum wage and overtime requirements of the FLSA.

70. Defendants purposefully and knowingly classified drivers as "independent contractors."

## VI.   CAUSE OF ACTION
### (Individual Claims for FLSA Violations)

71. Plaintiffs repeat and re-allege all the preceding paragraphs of this Complaint as if fully set forth in this section.

72. 29 U.S.C. §§ 206 and 207 require any enterprise engaged in commerce to pay all employees a minimum wage for all hours worked up to forty (40) in one week and to pay one and one-half times regular wages for all hours worked over forty (40) hours in a week, unless an employee meets certain exemption requirements of 29 U.S.C. § 213 and all accompanying Department of Labor regulations.

73. Defendants misclassified all Plaintiffs as independent contractors.

74. The costs that Plaintiffs incurred, including, but not limited to, use of their own vehicles, for the benefit of Defendants, caused Plaintiffs' free and clear pay to sometimes fall below minimum wages.

75. Defendants also unlawfully refrained from paying Plaintiffs an overtime premium for hours over forty per week.

76. Defendants' failure to pay each Plaintiff all minimum and overtime wages owed and failure to reimburse Plaintiffs' work-related vehicle expenses was willful.

77. By reason of the unlawful acts alleged herein, Defendants are liable to each Plaintiff for monetary damages, liquidated damages, and costs, including reasonable attorneys' fees, for all violations that occurred within the three (3) years prior to the filing of this Complaint.

## VIII.   PRAYER FOR RELIEF

WHEREFORE, premises considered, Plaintiffs Hansel Carter and Nicholas Carter respectfully pray for declaratory relief and damages as follows:

A. That each Defendant be summoned to appear and answer herein;

B. That each Defendant be required to account to Plaintiffs and the Court for all of the hours worked by Plaintiffs and all monies paid to them;

C. A declaratory judgment that Defendants' practices alleged herein violate the FLSA and attendant regulations;

D. Judgment for damages for all unpaid minimum wages and overtime compensation under the FLSA and attendant regulations;

E. Judgment for liquidated damages pursuant to the same laws in an amount equal to all unpaid minimum wages and overtime compensation owed to Plaintiffs during the applicable statutory period;

F. An order directing Defendants to pay Plaintiffs prejudgment interest, reasonable attorney's fees and all costs connected with this action;

G.      A trial by jury; and

H.      Such other and further relief as this Court may deem just and proper.

                Respectfully submitted:

By: /s/ Philip Bohrer
      Philip Bohrer (Bar #14089)
      phil@bohrerbrady.com
      Scott E. Brady (Bar #24976)
      scott@bohrerbrady.com
      BOHRER BRADY, LLC
      8712 Jefferson Highway, Suite B
      Baton Rouge, Louisiana 70809
      Telephone: (225) 925-5297
      Facsimile: (225) 231-7000